UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GERARD J. NG,

                                        Plaintiff,          NO. C09-192Z

vs.

                                                            ORDER

JOHN E. POTTER, Postmaster General,

                                        Defendant.


        THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim, dkt. 10.  Having considered the papers filed in support of and in opposition to the motion, the declarations and exhibits attached thereto, including the EEO Complaint of Discrimination, the USPS Acceptance for Investigation letter, and the Final Agency Decision, and having heard oral argument on November 3, 2009, the Court enters the following Order.

# I.    Background

## A.    EEO Complaint

Plaintiff Gerard Ng is employed as a city carrier for the United States Post Office. Compl; dkt. 1, ¶ 5.1.  Ng is an Asian American citizen of Filipino descent.  *Id.* ¶ 4.1.  On May 28, 2008, Ng filled out an "Information for Pre-Complaint Counseling" form, after having requested an appointment with a dispute resolution specialist on May 20, 2009. Cohen Decl., dkt. 11, Ex. B ("Pre-Complaint Form").  The Dispute Resolution Specialist's Inquiry Report lists an initial interview taking place on June 10, 2008, and a mediation occurring on June 11, 2008.  Sebree Decl., dkt. 15, Ex. 1 ("DRS Inquiry Report").

On August 5, 2008, Ng filed an "EEO Complaint of Discrimination in the Postal Service."  Cohen Decl, Ex. C (the "EEO Complaint").  Ng's EEO Complaint alleged that discriminatory acts took place on May 10, May 13, and June 2, 2008.  *Id.*, Ex. C at 1.  Ng alleged that on May 10, 2008, his supervisor Fred Tapuro questioned him about his lunch time at a public restaurant, embarrassing and humiliating him, and telling him that he was the cause of the post office losing money.  *Id.,* Ex. C at 2.  Ng alleged that on May 13, 2008, he approached Tapuro to discuss the May 10, 2008 incident, but that an argument erupted and Tapuro ordered him to leave the workroom floor.  *Id*., Ex. C at 2.  Also in his EEO Complaint, Ng described a letter from Mary Mitchell, Acting Manager of the station, in which she placed him on non-pay status due to the May 10, 2008 incident.  *Id.,* Ex. C at 2.  Ng further alleged in the EEO

Complaint that other employees have engaged in more serious incidents, but none were placed on non-pay status, and that this showed "a disparity of treatment" against him. *Id.*, Ex. C at 2. The EEO Complaint described two interviews with Acting Station Manager Louise Stafford, the first of which took place in the presence of the union shop steward, Brad Larsen. *Id.*, Ex. C at 2-3. After the first of these interviews, on May 21, 2008, Stafford placed Ng on non-pay status until further notice. *Id.*, Ex. C at 3. Ng alleged that the second interview, on May 23, 2008, was "simply a renewed attack on [his] integrity and reputation." *Id.*, Ex. C at 3. Ng again alleged "a total disparity in treatment towards [him] because of [his] race and national origin." *Id.*, Ex. C at 3.

In the EEO Complaint Ng asserted that "Mr. Tapuro, Ms. Stafford, Mr. Jeff Maxfield, and Ms. Mary Mitchell all have a history of harassing and intimidating Asians especially of Filipino descent," that "[n]umerous grievances have been filed against them," and that "[t]his is the second EEO complaint against Mr. Tapuro in a span of 2 months this year alone." *Id.*, Ex. C at 4. He further asserted that "[t]hese individuals have brought upon me tremendous emotional distress . . . ." *Id.*, Ex. C at 4.

## B.    EEO Investigation and Agency Decision

In a letter dated August 20, 2008, the EEO Office informed Ng and his attorney, Curman Sebree, that the EEO Office had received his formal complaint and had accepted it for investigation. Cohen Decl., Ex. D at 1. The letter limited the scope of investigation to the issues listed:

1.      On May 13, 2008, Complainant was sent home after confronting his supervisor about a May 10, 2008 incident;

2.      On May 15, 2008, Complainant received a letter informing him that he was placed in a non-pay status;

3.      On May 21, 2008, Complainant was placed in a non-pay status; and

4.      On June 2, 2008, Complainant was issued a Notice of Removal.

*Id.*, Ex. D at 1.  The letter further advised that "[i]f you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter."  *Id.*, Ex. D at 1. There is no evidence in the record, nor any allegation, that Ng or his attorney filed any written response to challenge the EEO Office's definition of accepted issues.

On November 25, 2008, a final agency decision was issued concluding that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged."  *Id.*, Ex. E ("Final Agency Decision") at 12.

## C.      **Present Action**

On February 13, 2009, Ng filed his civil complaint.  As in his EEO Complaint, Ng's civil complaint outlines the May 10, 2008 incident and the subsequent employment actions taken against him between May 13 and June 2, 2008.  Compl. ¶¶ 5.2-5.8.  Ng's civil complaint alleges under Title VII that John Potter, the Postmaster General, discriminated against Ng "on the basis of his race and national origin in the terms and conditions of his employment and created an unlawful hostile work environment."  *Id.* ¶ 6.2.  The parties agree that Ng's civil complaint alleges two

claims of discrimination under Title VII: one for disparate treatment and one for hostile work environment.

## II.    Discussion

### A.    Standard of Review

Defendant Potter moves to dismiss Plaintiff Ng's Title VII hostile work environment claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[1] The plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering a challenge to the factual existence of subject matter jurisdiction, a court is not restricted to the pleadings, but may review any evidence necessary to ensure that jurisdiction is proper. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Although a court may look outside the pleadings, this does not convert the motion into one for summary judgment. *Id.*[2]

### B.    Exhaustion of Administrative Remedies Standard

Defendant Potter moves to dismiss Plaintiff Ng's Title VII hostile work environment claim based on Ng's failure to exhaust his administrative remedies with respect to that claim. Substantial compliance with the exhaustion requirement is a jurisdictional prerequisite under Title VII. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th

---

[1] Potter is not moving to dismiss Ng's Title VII disparate treatment claim.

[2] Plaintiff Ng mistakenly set forth the summary judgment standard as the standard of review. *See* Pl.'s Resp. at 3-4.

Cir. 2003). The jurisdictional scope of the court action depends upon the scope of the EEOC charge, the actual investigation, and what could reasonably have been expected to grow out of the investigation. *Id.*; *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002). Because typical complaints are filled out by non-attorneys, courts construe the EEOC charge with "utmost liberality," and it is sufficient that the EEOC is apprised of the alleged discriminatory parties and the alleged discriminatory acts. *Leong,* 347 F.3d at 1122*; see also Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). Allegations of discrimination not included in the administrative charge must be like, or reasonably related to, those made in the civil complaint for the court to consider them. *Maui Police Dept.*, 276 F.3d at 1100. Additionally, a court considers whether a separate EEOC complaint and investigation would be redundant. *Id.* at 1102. The exhaustion requirement allows the EEOC to serve its investigative and conciliatory role, puts parties on notice of the claim, and narrows the issues for prompt adjudication. *Id.* at 1099.

Absent a charge of agency negligence in recording a claim, a court examines only the EEOC complaint and the related investigation to determine exhaustion. *Maui Police Dept.*, 276 F.3d at 1100. "The crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)).

**C.  Hostile Work Environment Standard**

To establish a hostile work environment claim premised on race or national origin under Title VII, a plaintiff must prove: (1) that he was subjected to verbal or physical conduct of a racial nature, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  The Court considers the totality of circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or is a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  *Id*.  The working environment must be both subjectively and objectively perceived as abusive. *Id*.  Further, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  For a hostile work environment claim, "the unlawful employment practice cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years, and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id*.

**D.  Analysis of Ng's Exhaustion of Remedies**

**1.  Ng's EEO Complaint Alleges Discrete Acts of Discrimination**

Ng filed an EEO Complaint alleging a number of discrete acts of alleged discrimination.  Those discrete acts cannot support a hostile work environment claim.

*See Mathirampuzha v. Potter,* 548 F.3d 70 (2d Cir. 2008).[3]  In *Mathirampuzha,* the plaintiff filed an EEO Complaint regarding one alleged act, but in his civil complaint filed in district court he also alleged he was subjected to a hostile work environment. *Id*. at 73.  There was no reference to repeated conduct in the EEO Complaint, nor to the cumulative effect of individual acts.  *Id*. at 77.  Instead, there was a single act of physical and verbal abuse alleged, which was not reasonably related to a hostile work environment claim.  *Id.*  Thus, the plaintiff had not complied with the exhaustion requirement regarding his hostile work environment claim.  *Id.*  Although Ng relies heavily on *Mathirampuzha*, the case actually supports the dismissal of his claim.  Like the plaintiff in *Mathirampuzha*, Ng raised only discrete acts of discrimination in his EEO Complaint, and he did not assert that he had been subjected to verbal or physical conduct of a racial nature that was sufficiently pervasive to alter the conditions of his employment or create an abusive work environment.  First, Ng alleged no physical conduct.  Second, the verbal conduct alleged between Ng and his managers was not of a racial nature.  Just as in *Mathirampuzha*, Ng made no reference to repeated conduct or to the cumulative effect of individual acts in his EEO Complaint.

---

[3] Both Potter and Ng rely on this Second Circuit case to support their arguments because the facts are somewhat analogous. The Second Circuit's Title VII jurisprudence is similar to that of the Ninth Circuit in that it emphasizes the substance and not the label of the charge, construes the charge liberally, and allows the exhaustion requirement to cover not only what was investigated, but what could reasonably be expected to arise from the investigation. *See Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003).

Ng relies on *Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir. 1990), to support his contention that the discrete acts alleged in his EEO Complaint, coupled with his requested resolution to "stop the practice of discrimination and harassment towards Asians, especially Filipinos," found in the DRS Inquiry Report, sufficiently notified the agency of a hostile work environment. *See* Sebree Decl., Ex. 1 (the DRS Inquiry Report). In *Sosa*, the plaintiff alleged that the defendants had "*engaged in a pattern and practice of retaliating against me*" in his administrative charge. 920 F.2d at 1457 (emphasis in original). Additionally, Sosa alleged that the defendants "had subjected me [Sosa] to intimidation, harassment, and disparate treatment *with respect to terms and conditions of employment*." *Id*. (emphasis added).[4] In contrast, Ng has never alleged that the conditions of his employment were altered as a result of any harassment. While Ng's EEO Complaint specifically alleged that his managers "all have a history of harassing and intimidating Asians especially of Filipino descent," he did not tie this sweeping allegation to any conduct directed toward himself. *See* Cohen Decl., Ex. C (the EEO Complaint) at 4.

---

[4] It is worth noting that Professor Sosa, in his civil complaint, listed facts supporting his continuing violation theory that occurred from 1979 to 1988, and five of the discrete acts alleged were his repeated denial of a promotion to Department Chair, against the recommendations of his colleagues. *Sosa*, 920 F.2d at 1453-54. Here, Ng alleged only discrete acts occurring between May 10 and June 2, 2008, and there are no more facts alleged in his civil complaint than in his EEO Complaint to support a hostile work environment claim.

## 2.   <u>EEO's Investigation Was Limited to Disparate Treatment</u>

Ng argues that the investigation of his disparate treatment claim should have led to an investigation of a hostile work environment claim.  Ng and his attorney, however, failed to object to the EEO's definition of accepted issues for the investigation, which was limited to disparate treatment.  Moreover, there is no evidence that Ng or his attorney sought to amend the EEO Complaint to include allegations that would have led to an investigation of a hostile work environment claim.  While a disparate treatment theory is obvious in Ng's EEO Complaint, the same cannot be said about a theory of a hostile working environment.

Ng further argues that an examination of Ng's managers' motive in treating him disparately would have revealed a hostile work environment.  In *E.E.O.C. v. Farmer Brothers Company*, the plaintiff had alleged a discriminatory scheme on the part of Farmer Brothers, whereby the president, in order to permanently reduce the percentage of women in production jobs, laid off a number of both women and men, waited until their nine-month recall rights had expired, and then filled the vacancies with only men. 31 F.3d 891, 894 (9th Cir. 1994).  The defendants in *Farmer Brothers* argued that the plaintiff had failed to include a discriminatory layoff claim in her administrative charge and that such a claim was not like her allegations of discrimination in failing to recall and rehire her.  *Id*. at 899.  The court found that the plaintiff had, in fact, alleged a discriminatory layoff claim, but went on to hold that even if the plaintiff had not alleged a discriminatory layoff claim, the layoff itself was an integral part of the

defendants' discriminatory scheme.  *Id.*  The court reasoned that "in order to evaluate (or even understand) [plaintiff's] theory of the case, it was *necessary* for the EEOC to investigate the circumstances of [plaintiff's] layoff."  *Id.*  Unlike the plaintiff in *Farmer Brothers*, Ng did not reveal his purposed hostile work environment theory of the case by alleging a specific discriminatory scheme with a beginning, middle and end.  Ng's EEO Complaint alleged discrete instances of disparate discipline, and the ensuing investigation was reasonably limited to those acts.

### 3.  Ng's Hostile Work Environment Claim is Not Like or Reasonably Related to His Disparate Treatment Claim

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'"  *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trust* (*Brown*), 732 F.2d 726, 729 (9th Cir. 1984)).  The charge must at least describe the facts and legal theory with sufficient clarity to notify the agency that employment discrimination is alleged, but it is the substance, and not the label, of the charge that controls.  *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981).  A perfect fit between the administrative charge and judicial complaint is not required, so long as the policies of promoting conciliation and avoiding bypass of the administrative process have been served.  *Id.*

Ng relies on *Deravin v. Kerik,* 335 F.3d 195 (2d Cir. 2003), to support his argument that his hostile work environment claim is like, and related to, his disparate

treatment claim. In *Deravin*, the plaintiff had checked the box on his EEOC Complaint marked "national origin," but not the "race" box, as grounds for his claim. 335 F.3d at 200.[5] Because the lines between discrimination on account of race and national origin may overlap, or be "so thin as to be indiscernible," the EEOC had sufficient notice to look for potential race discrimination. *Id*. at 202-03. Moreover, because it is the substance of the charge, and not its label, which controls the analysis, it was sufficient that facts were alleged to support the plaintiff's claim of race discrimination. *Id*. at 202. Here, however, the lines between disparate treatment and hostile work environment are not so thin as to be indiscernible. Ng's two Title VII claims are different legal theories of discrimination that require different factual allegations for support. And, while Ng argues that he continually alleged that his managers "all have a history of harassing and intimidating Asians especially of Filipino descent" in his administrative complaint forms, there was no accompanying substance to this allegation sufficient to notify the agency of a hostile work environment claim.[6]

If the judicial complaint presents a new theory of liability requiring a different factual basis, neither of which is present in the administrative charge, the new theory is

---

[5] The plaintiff also alleged that it was the negligence of the EEOC counselor who helped him fill out this form that led to the mistake. *Id*.

[6] Ng argues that there was no box to check for hostile work environment on the EEO Complaint form. The boxes listed are the protected classes that create the basis of the discrimination, not the legal theories of discrimination. That there was no box to check for "hostile work environment" did not relieve Ng of his obligation to allege facts that would support a hostile work environment claim.

not like or reasonably related to the previous charge because the agency could not have had adequate notice of it. *See Leong*, 347 F.3d at 1122 . In *Leong v. Potter*, the plaintiff submitted an affidavit to the EEOC alleging discrimination against him based on his "race, color, religion, sex, national origin, and/or age," but he did not mention any disability. 347 F.3d at 1121. The plaintiff's judicial complaint alleging disability discrimination was properly dismissed as not like or reasonably related to his administrative claims since the agency did not have notice of this new theory of liability. *Id*. Similarly, in *Brown*, intentional discrimination was not like or reasonably related to a disparate impact charge filed a year prior to the intentional discrimination charge. 732 F.2d at 729; *see also Diefenderfer v. Peters*, 2009 WL 1884419, slip. op. at 3 (W.D.Wash. June 29, 2009) (retaliatory constructive discharge claim presented different theory of liability not like or reasonably related to EEO charge). Likewise, Ng alleged discrete instances of disparate treatment in his EEO Complaint, but neither the factual underpinnings nor the theory of a hostile work environment claim were alleged.

Where the claims are not so closely related that agency action would be redundant, the EEO Office must be given opportunity to consider the claim before a federal suit is brought. *Stache v. International Union of Bricklayers*, 852 F.2d 1231, 1234 (9th Cir. 1988). Here, the EEO Office was investigating whether similarly situated employees had received lesser discipline for committing acts similar to Ng's conduct, and whether Ng's more severe discipline was based on his race or national

origin. This is a different analysis than whether Ng had been subjected to unwelcome verbal or physical conduct directed at him because of his race or national origin that was sufficiently severe or pervasive as to alter the conditions of his employment or to create an abusive working environment. Ng's hostile work environment claim is not like or reasonably related to the disparate treatment claims included in his EEO Complaint.

## III.    Conclusion

The Court GRANTS Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim, dkt. 10, for failure to exhaust administrative remedies. Accordingly, Plaintiff's hostile work environment claim is DISMISSED without prejudice.

IT IS SO ORDERED.

DATED this 12th day of November, 2009.

Thomas S. Zilly
United States District Judge